Javier L. Merino
Dann Law
372 Kinderkamack Road, Suite 5
Westwood, NJ 07675
Telephone: (216) 373-0539
Facsimile: (216) 373-0536
jmerino@dannlaw.com
notices@dannlaw.com

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
## TRENTON DIVISION

| | |
|---|---|
| **JOSEPH SCAFIDI** | CASE NO.: |
| Plaintiff, | JUDGE: |
| vs. | **COMPLAINT FOR DAMAGES** |
| **NATIONSTAR MORTGAGE, LLC d.b.a. CHAMPION MORTGAGE,** | **JURY DEMAND ENDORSED HEREON** |
| Defendant. | |

Plaintiff Joseph Scafidi, through counsel, for his Complaint against Defendant Nationstar

Mortgage, LLC d.b.a. Champion Mortgage, states:

### PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Joseph Scafidi ("Plaintiff" or "Scafidi") is the owner of residential real

property, located at and commonly known as 21 Whitman Boulevard, Manalapan, NJ 07726 (the

"Home") which he has occupied as his primary, principal residence at all this relevant to the

Complaint.

2.      Defendant Nationstar Mortgage, LLC d.b.a. Champion Mortgage ("Champion") is

a corporation headquartered in Dallas, Texas and is the servicer of a Home Equity Conversion

Loan Agreement (the "Agreement") and an Adjustable Rate Home Equity Conversion Mortgage

(the "Mortgage") (collectively, the "Loan"), each executed by Scafidi and his now deceased wife Brenda Scafidi. *A copy of the Loan documents is attached as Exhibit 1*.

3.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA) and the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* (RESPA).

4.      This Court has supplemental jurisdiction to hear any and all state law claims that are plead herein or that may subsequently arise pursuant to 28 U.S.C. § 1367.

5.      Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## SUMMARY OF CLAIMS

6.      This action is primarily filed to enforce regulations promulgated by the Consumer Financial Protection Bureau (CFPB) and implemented pursuant to 12 U.S.C. § 2605(f) that became effective on January 10, 2014, specifically, 12 C.F.R. § 1024.1, *et seq.* ("Regulation X").

7.      In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

8.      Specifically, on January 17, 2013, the CFPB issued the Real Estate Settlement Procedures Act Mortgage Servicing Final Rules, 78 F.R. 10695 (Regulation X) (February 14, 2013), which became effective on January 10, 2014.

9.      Mortgage servicers are prohibited from failing "to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for

purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

10.    Mortgage servicers are prohibited from failing "to comply with any other obligation found by the [CFPB], by regulation, to be appropriate to carry out the consumer protection purposes of [RESPA]." 12 U.S.C. § 2605(k)(1)(E).

11.    The Loan is a "federally related mortgage loan" as that term is defined by 12 C.F.R. § 1024.2(b).

12.    Champion is subject to the aforesaid regulations and does not qualify for the exemption for "small servicers", as defined in 12 C.F.R. § 1026.41(e)(4). *See* 12 C.F.R. § 1024.30(b)(1).

13.    Champion is not a "qualified lender", as defined in 12 C.F.R. § 617.700. *See* 12 C.F.R. § 1024.30(b)(3).

14.    Scafidi asserts claims for relief against Champion for breaches of the specific rules under Regulation X as set forth, *infra*.

15.    Scafidi has a private right of action under RESPA pursuant to 12 U.S.C. § 2605(f) and such action provides for remedies including actual damages, statutory damages, and attorneys' fees and costs.

16.    Scafidi additionally asserts a statutory claim for violations of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-2 (the "CFA").

## **FACTUAL BACKGROUND**

17.     On or about May 6, 2016, Champion filed foreclosure proceedings against Scafidi in the Superior Court of New Jersey, Chancery Division for Monmouth County in the case designated as Docket No. F-012774-16 on May 6, 3016 (the "Foreclosure").

18.     Through the Foreclosure Complaint (the "Complaint"), Champion alleged that Scafidi "failed to perform an obligation under the terms of the loan by failing to maintain taxes, or insurance, or both on the subject property, causing default the day after the aforementioned due date and the default remains uncured" with an alleged default date of November 25, 2015.

19.     Scafidi alleges he was never served with a copy of the Complaint prior to judgment.

20.     Scafidi maintains that he always properly maintained hazard insurance for the Home, timely paid all property taxes due and owing on the Home, and dutifully responded to all requests or demands he received from Champion in regard to the same.

21.     Having not been served with a copy of the Complaint, Scafidi was unable to mount a timely defense to the Complaint and judgment was entered against Scafidi in the Foreclosure on February 2, 2017 (the "Judgment").

22.     Champion purchased the Home at foreclosure sale on or about June 19, 2017 (the "Sale") and subsequently took steps to evict Scafidi from the Home.

23.     Upon learning of the Foreclosure once Champion took steps towards eviction, Scafidi hired counsel to attempt to halt the eviction process and vacate the Judgment.

24.     Scafidi, through counsel, filed a motion to stay the eviction proceedings and vacate the Judgment in the Foreclosure (the "Motion").

25.     In support of the Motion, Scafidi certified that he had remained current on any and all obligations regarding the maintenance of hazard insurance for the Home and the payment of property taxes for the Home and provided proof of the same (the "Certification"), contrary to the allegations contained in the Complaint attaching proof of payment in fulfillment of such obligations. *A copy of the Certification is attached as Exhibit 2.*

26.     On or about May 1, 2018, Scafidi and Champion entered into a Consent Order in the Foreclosure executed by Judge Katie A. Gummer (the "Order") ordering, in relevant part, as follows:

   a.  The Sale is vacated;

   b.  The Sheriff's Deed recorded subsequent to the Sale is vacated and ordered expunged from the record;

   c.  The Judgment is vacated; and,

   d.  The Foreclosure is dismissed without costs against any party to the Foreclosure.

*A copy of the Order is attached as Exhibit 3.*

27.     Beginning on or about July 3, 2018, Champion began sending Reverse Mortgage Monthly Statements to Scafidi that included a number of fees related to default services, attorneys' fees, and other unknown items (the "July 2018 Statement"). *A copy of the July 2018 Statement is attached as Plaintiff's Exhibit 4.*

28.     On or about July 9, 2018, Champion sent correspondence to Scafidi claiming that the "hazard insurance policy expired and we do not have evidence that you have obtained new coverage" (the "July 9 Letter") despite Scafidi previously providing Champion with evidence of coverage through counsel. *A copy of the July 9 Letter is attached as Plaintiff's Exhibit 5.*

29.     On or about August 10, 2018, Scafidi, through counsel, sent correspondence to counsel for Champion explicitly stating that the fees on the July 2018 were in error as they should "never have been included", that the Order provided that no costs shall be charged to either party in the Foreclosure, and demanding that such fees be removed (the "August 2018 Letter"). *A copy of the August 2018 Letter is attached as Exhibit 6.*

30.     Through the August 2018 Letter, Scafidi further indicated that contrary to the allegations in the July 9 Letter he, through counsel, "consistently provided proof that the insurance is in place and [was] doing so again". *See Exhibit 6.*

31.     Upon information and belief, and supported by the July 9 Letter and the August 2018 Letter, Champion repeatedly would demand proof of hazard insurance on the Property despite Scafidi previously complying with requests to do so. *See Exhibits 5 and 6.*

32.     Champion subsequently failed or otherwise refused to remove any of the outstanding fees on the July 2018 Statement.

33.     On or about January 4, 2019, Scafidi, through counsel, sent a notice of error to Champion via Certified Mail [Tracking No. 70182290000096118255] captioned "Notice of errors pursuant to 12 C.F.R. § 1024.35(b)(11) for improperly paying property taxes prior to the applicable due dates and for subsequently improperly filing for foreclosure; notice of errors pursuant to 12 C.F.R. § 1024.35(b)(5) for imposing fees for which a servicer had no reasonable basis to impose" ("NOE #1"). *A copy of NOE #1 is attached as Exhibit 7.*

34.     Scafidi sent NOE #1 to Champion at the address designated by Champion for the receipt of such notices pursuant to 12 C.F.R. § 1024.35(c) (the "Designated Address") and Champion received the same at the Designated Address on January 9, 2019. *A copy of the*

*tracking information for NOE #1, obtained from the website for the United States Postal Service (USPS) ([www.usps.com](www.usps.com)), is attached as Exhibit 8.*

35.     Through NOE #1, Scafidi alleged that Champion committed errors pursuant to 12 C.F.R. §§ 1024.35(b)(5) and (11), respectively, by: (1) Wrongfully claiming Scafidi to be in default as of November 25, 2015 and for subsequently unnecessarily pre-empting Scafidi's attempted payments for property taxes on the Loan by remitting escrow payments for property taxes on the Home prior to the applicable due date and/or prior to the grace period for such due date; and (2) imposing fees related to default servicing stemming from a default that was solely the fault of Champion. *See Exhibit 7.*

36.     Scafidi enclosed with NOE #1 proof of payment of all relevant hazard insurance policy payments for the Property showing that there was no lapse in coverage on the Home. *See Exhibit 7.*

37.     On or about February 5, 2019, Scafidi, through counsel, sent a notice of error to Champion via facsimile to (866)616-2160 captioned "Notice of errors pursuant to 12 C.F.R. § 1024.35(b)(11) for violation of 12 C.F.R. §1024.35(e)" ("NOE #2"). *A copy of NOE #2 is attached as Exhibit 9.*

38.     Scafidi sent NOE #2 to Champion to the facsimile number designated by Champion for the receipt of such notices pursuant to 12 C.F.R. § 1024.35(c) (the "Designated Number") and Champion received the same at the Designated Number on February 5, 2019. *A copy of the confirmation of facsimile transmission for NOE #2 is attached as Exhibit 10.*

39.    Through NOE #2, Scafidi alleged that Champion committed an error pursuant to 12 C.F.R. §1024.35(e) by failing to send written notice to Scafidi acknowledging receipt of NOE #1. *See Exhibit 9*.

40.    On or about February 21, 2019, Champion sent correspondence to Scafidi in response to NOE #1 and NOE #2 (the "NOE Response"). ***A copy of the NOE Response is attached as Exhibit 11***.

41.    Through the NOE Response, Champion admitted that Champion Mortgage failed to send written notice acknowledging its receipt of NOE #1 as alleged by and through NOE #2. *See Exhibits 9 and 11*.

42.    Further, through the NOE Response, Champion stated that the claimed default on the Loan and the subsequent fees relating to the same were not in error as Scafidi failed to notify Champion of the hazard insurance policy in place in 2015 and therefore refused to reimburse Scafidi for damages related to the errors alleged through NOE #1. *See Exhibits 7 and 11*.

43.    As previously indicated, Scafidi had consistently notified Champion at all times of his maintenance of hazard insurance for the Home and Champions claim to the contrary is incorrect.

44.    Regarding the Loan, Champion has routinely claimed that there was not an active hazard insurance policy in effect for the Home despite previously being notified of an active policy. *See Exhibits 5 and 6*.

## DAMAGES

45.     Despite Scafidi's fulfilment of all required obligations on the Loan, Champion wrongfully declared Scafidi to be in default and initiated the Foreclosure.

46.     Due to Champion's improper actions, Scafidi was required to remit funds for attorneys' fees and costs to mount an attempt to vacate the Judgment and Sale and stop attempts towards his eviction from the Home.

47.     Further, following the entrance of the Order, Champion wrongfully continued to claim fees and costs related to the manufactured default and Foreclosure from Scafidi and has since attempted to collect upon the same despite demands to cease through NOE #1 and NOE #2 (collectively, the "NOEs") and otherwise.

48.     Champion's improper actions have further caused Scafidi to suffer from other damages including:

a.  Legal fees and expenses to submit requests for information and the NOEs to Champion in an attempt to have them act in accordance with state and federal law and guidelines; and,

b.  Severe emotional distress driven by the fear that he might lose and be forced to leave his Home when the Loan was intended to afford him expenses to continue living in the Home through his remaining years which has resulted in loss of sleep, anxiety, depression, embarrassment, and other significant harm.

49.     Throughout this entire ordeal, Scafidi has simply wanted to be able to enjoy the benefit of his diligence and persistence in maintaining hazard insurance and property tax payments for the Home, enjoy the benefit of his Loan, and most importantly, remain in his Home without fear of foreclosure.

## ADDITIONAL EVIDENCE OF A PATTERN AND PRACTICE OF REGULATION X VIOLATIONS BY CHAMPION

50.     Champion's actions are part of a pattern and practice of behavior in violation of Scafidi's rights and in abdication and contravention of Champion's obligations under the mortgage servicing regulations set forth in Regulation X of RESPA.

51.     At the time of the filing of this Complaint, Champion has had One Hundred Eighty-Nine (189) consumer complaints lodged against it specifically concerning the issue identified on the CFPB's consumer complaint database as "loan modification, collection, foreclosure" related to reverse mortgages. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database (https://www.consumerfinance.gov/data-research/consumer-complaints/).

52.     At the time of the filing of this Complaint, Champion has had One Hundred Ninety-One (191) consumer complaints lodged against it specifically concerning the issue identified on the CFPB's consumer complaint database as "loan servicing, payments, escrow account" related to reverse mortgages. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database (https://www.consumerfinance.gov/data-research/consumer-complaints/).

53.     Scafidi has reviewed the CFPB's consumer complaint database and has identified fifteen (15) complaints from other borrowers alleging RESPA violations by Champion which evidence conduct demonstrating that Champion has engaged in a pattern and practice of violating RESPA with respect to other borrowers. ***The aforementioned consumer complaints are attached as Exhibit 12 with the date, details, and a narrative disclosed by each consumer set forth in each complaint.***

## COUNT ONE: VIOLATION OF RESPA

**[Violations of 12 C.F.R. § 1024.35(e) and 12 U.S.C. §§ 2605(k)(1)(C) and (E) for failing to**

**properly respond to a notice of error]**

54.     Scafidi restates and incorporates all of the statements and allegations contained in paragraphs 1 through 53 in their entirety, as if fully rewritten herein.

55.     12 C.F.R. § 1024.35(a) provides that "[a] servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred."

56.     Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower."

57.     12 C.F.R. § 1024.35(e)(1)(i) provides that a servicer must respond to a notice of error by either:

(A)     Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

(B)     Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

58.     12 U.S.C. § 2605(k)(1)(C) provides that "[a] servicer of a federally related mortgage shall not … fail to take timely action to respond to a borrower's requests to correct

errors relating to allocation of payments, final balances for purposes of paying off the loan, or

avoiding foreclosure, or other standard servicer's duties."

59.    Standard servicer duties are those "typically undertaken by servicers in the

ordinary course of business", are not limited to duties that constitute "servicing", and include:

> [D]uties to comply with investor agreements and servicing
> program guides, to advance payments to investors, to process and
> pursue mortgage insurance claims, to monitor coverage for
> insurance (e.g., hazard insurance), to monitor tax delinquencies, to
> respond to borrowers regarding mortgage loan problems, to report
> data on loan performance to investors and guarantors, and to work
> with investors and borrowers on options to mitigate losses for
> defaulted mortgage loans.

78 F.R. 10696, 10739.

60.    12 U.S.C. § 2605(k)(1)(E) provides that "[a] servicer of a federally related

mortgage shall not … fail to comply with any other obligation found by the Bureau of Consumer

Financial Protection, by regulation, to be appropriate to carry out the consumer protection

purposes of this chapter."

61.    NOE #1 meets the requirements of a notice of error as defined by 12 C.F.R. §

1024.35(a). *See Exhibit 7.*

62.    Scafidi sent NOE #1 to Champion at the Designated Address and Champion

received the same at the Designated Address on January 9, 2019. *See Exhibit 8.*

63.    Through NOE #1, Scafidi alleged that Champion committed errors pursuant to 12

C.F.R. §§ 1024.35(b)(5) and (11), respectively, by: (1) Wrongfully claiming Scafidi to be in

default as of November 25, 2015 and for subsequently unnecessarily pre-empting Scafidi's

attempted payments for property taxes on the Loan by remitting escrow payments for property

taxes on the Home prior to the applicable due date and/or prior to the grace period for such due

date; and (2) imposing fees related to default servicing stemming from a default that was solely the fault of Champion. *See Exhibit 7.*

64.     Scafidi enclosed with NOE #1 proof of payment of all relevant hazard insurance policy payments for the Property showing that there was no lapse in coverage on the Home. *See Exhibit 7.*

65.     Further, through the NOE Response, Champion stated that the claimed default on the Loan and the subsequent fees relating to the same were not in error as Scafidi failed to notify Champion of the hazard insurance policy in place in 2015 and therefore refused to reimburse Scafidi for damages related to the errors alleged through NOE #1. *See Exhibits 7 and 11.*

66.     Champion failed to perform a reasonable investigation into the errors alleged through NOE #1 prior to determining that no error occurred as claimed through the NOE Response. *See Exhibit 11.*

67.     As previously indicated, Scafidi had consistently notified Champion at all times of his maintenance of hazard insurance for the Home and Champions claim to the contrary is incorrect.

68.     Regarding the Loan, Champion has routinely claimed that there was not an active hazard insurance policy in effect for the Home despite previously being notified of an active policy. *See Exhibits 5 and 6*

69.     The NOE Response failed to meet the requirements of 12 C.F.R. § 1024.35(e)(1)(i)(A) or 12 C.F.R. § 1024.35(e)(1)(i)(B). *See Exhibit 11.*

70.     Champion failed to comply with 12 U.S.C. § 2605(k)(1)(C) in failing to take timely action to respond to Scafidi regarding the requirement to monitor coverage for insurance (e.g., hazard insurance), which is a standard servicer duty.

71.     Champion failed to comply with 12 U.S.C. § 2605(k)(1)(E) by neglecting its obligations pursuant to 12 C.F.R. § 1024.35(e).

72.     Champion's failure to correct the noticed errors directly and proximately caused Scafidi to suffer actual damages as further described, *supra*, including being charged for improper fees on the Loan and extreme emotional distress.

73.     Champion's failure to properly respond to NOE #1 constitutes a clear, separate, and distinct violation of 12 C.F.R. § 1024.35(e) and 12 U.S.C. §§ 2605(k)(1)(C) and (E).

74.     Champion's actions are believed to be part of a pattern and practice of behavior in conscious disregard for Scafidi's rights.

75.     As a result of Champion's actions, Champion is liable to Scafidi for statutory damages and actual damages as further described, *supra*. 12 U.S.C. § 2605(f)(1).

76.     Additionally, Scafidi requests reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

## COUNT TWO: VIOLATION OF RESPA

**[Violations of 12 C.F.R. § 1024.35(d) and 12 U.S.C. § 2605(k)(1)(E) for failing to send written notice acknowledging receipt of a notice of error]**

77.     Scafidi restates and incorporates all of the statements and allegations contained in paragraphs 1 through 53 in their entirety, as if fully rewritten herein.

78.     NOE #1 constitutes a notice of error as defined by 12 C.F.R. § 1024.35(a) as it is a "written notice from the borrower that asserts an error and that includes the name of the

borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." *See Exhibit 7.*

79.     12 C.F.R. § 1024.35(d) provides that "[w]ithin five days (excluding legal public holidays, Saturdays, and Sundays) of a servicer receiving a notice of error from a borrower, the servicer shall provide to the borrower a written response acknowledging receipt of the notice of error."

80.     12 U.S.C. § 2605(k)(1)(E) provides that "[a] servicer of a federally related mortgage shall not … fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter."

81.     Scafidi sent NOE #1 to Champion at the Designated Address and Champion received the same at the Designated Address on January 9, 2019. *See Exhibit 8.*

82.     Champion failed to send written notice acknowledging receipt of NOE #1 in a timely manner as required by 12 C.F.R. § 1024.36(d), which Champion admitted through the NOE Response, which constitutes a clear and distinct violation of the same.  *See Exhibit 11.*

83.     Champion's failure to send written notice acknowledging receipt of NOE #1 directly necessitated the preparation and sending of NOE #2 causing Plaintiff to incur the fees, costs, and expenses associated with such.

84.     Scafidi has suffered actual damages as a result of this violation, as detailed, *supra*, including but not limited to incurring costs, fees, and expenses in drafting and sending NOE #2 which would not have been necessary but for Champion's failure to comply with 12 C.F.R. § 1024.36(d) in relation to NOE #1.

85.     Champion's actions in failing to send written notice acknowledging receipt of NOE #1 are part of a pattern and practice of behavior in violation of Scafidi's rights and an abdication of Champion's responsibilities under RESPA.

86.     As a result of Champion's actions, Champion is liable to Scafidi for statutory damages and actual damages as further described, *supra*. 12 U.S.C. § 2605(f)(1).

87.     Additionally, Scafidi requests reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

**COUNT THREE:**
**VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT, N.J.S.A. § 56:8,** *et seq.*

88.     Scafidi restates and incorporates all of the statements and allegations contained in paragraphs 1 through 53 in their entirety, as if fully rewritten herein.

89.     The CFA prohibits:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate…

N.J.S.A. § 56:8-2.

90.     In the operation of its business, Champion engaged in the use of unconscionable commercial practices and misrepresentations, as described, *supra*.

91.     Champion is a "person" as defined by N.J.S.A. § 56:8-1(d) as Champion is a partnership, corporation, company, trust, business entity, or business association.

92.     Scafidi had consistently notified Champion at all times of his maintenance of hazard insurance for the Home and Champions claim to the contrary is incorrect.

93.     Regarding the Loan, Champion has routinely claimed that there was not an active hazard insurance policy in effect for the Home despite previously being notified of an active policy. *See Exhibits 5 and 6*

94.     Despite Scafidi having maintained hazard insurance for the Home and remaining current on the property taxes for the Home, Champion improperly claimed a default and initiated the Foreclosure and Sale causing Scafidi to incur substantial legal fees.

95.     Further, despite being notified of their erroneous actions through NOE #1, Champion refused to rectify the situation and continued to charge fees against the Loan for Champion's own mistaken actions. *See Exhibits 7 and 11.*

96.     Champion's actions and statements in wrongfully claiming through the NOE Response that Scafidi did not properly notify Champion of hismaintenance of hazard insurance for the Property constitute false promises, misrepresentations, and/or unconscionable acts under the CFA.

97.     Champion's unconscionable commercial practices have caused ascertainable losses to Scafidi, further described *supra*, including but not limited to:

a.  Legal fees and expenses to submit requests for information and the NOEs to Champion in an attempt to have it act in accordance with state and federal law and guidelines; and,

b.  Severe emotional distress driven by the fear that he might lose and be forced to leave his Home when the Loan was intended to afford him expenses to continue living in the Home through his remaining years which has resulted in loss of sleep, anxiety, depression, embarrassment, and other significant harm.

98.     Scafidi is entitled to reasonable attorneys' fees, filing fees, and reasonable costs of suit. N.J.S.A. § 56:8-19.

99.     Scafidi further requests, as additional damages, "other appropriate legal or equitable relief" in the form of damages for his extreme emotional distress, directly and proximately caused by Champion's actions. N.J.S.A. § 56:8-19.

## COUNT FOUR:
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

100.    Scafidi restates and incorporates all of the statements and allegations contained in paragraphs 1 through 53 in their entirety, as if fully rewritten herein.

101.    Nationstar engaged in extreme and outrageous conduct as alleged herein. Nationstar repeatedly failed to properly handle Scafidi's escrow account,  instead choosing to file and steamroll a foreclosure against Scafidi, resulting in him being forced to the brink of losing his home.

102.    Nationstar acted with reckless disregard for the probability that its conduct would cause emotional distress to Scafidi who was wrongfully foreclosed upon.

103.    As a direct and proximate result of Nationstar's conduct, Scafidi has suffered both monetary losses and emotional distress as plead, *supra*, at ¶¶ 45-49.

104.    Scafidi's emotional distress was so severe that no reasonable person could be expected to endure it.

105.    The damage to Scafidi was foreseeable because Nationstar knew Scafidi would lose his home after Nationstar improperly mishandled Scafidi's escrow account.

106.    As Nationstar's conduct was willfully and wantonly reckless or malicious, Scafidi is entitled to punitive damages.

## COUNT FIVE:
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

107.    Scafidi restates and incorporates all of the statements and allegations contained in paragraphs 1 through 53 in their entirety, as if fully rewritten herein.

108.    Nationstar owed a duty to exercise reasonable care in servicing Scafidi's reverse mortgage account.

109.    Nationstar breached that duty by negligently misrepresenting that Scafidi did not maintain his homeowners' insurance policy and subsequently filing a foreclosure against him.

110.    As a direct and proximate cause of Nationstar's failures, Scafidi has suffered monetary losses and emotional distress as plead, *supra*, at ¶¶ 45-49.

111.    The damage to Duncan was foreseeable because Nationstar knew or should have known that Scafidi would lose his home after Nationstar misrepresented that Scafidi failed to maintain his homeowners' insurance policy.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Joseph Scafidi prays that this Court grant judgment in their favor and against Defendant Nationstar Mortgage, LLC d.b.a. Champion Mortgage and award him the following:

A.      Actual damages fromNationstar Mortgage, LLC d.b.a. Champion Mortgage in an amount to be determined at trial for the allegations contained in Counts One through Three;

B.      Statutory damages from Nationstar Mortgage, LLC d.b.a. Champion Mortgage in the amount of Two Thousand Dollars ($2,000.00) per violation contained in Counts One and Two;

C.      Treble damages from Nationstar Mortgage, LLC d.b.a. Champion Mortgage as to Count Three;

D.      Additional damages from Nationstar Mortgage, LLC d.b.a. Champion Mortgage for Scafidi's extreme emotional distress as to Count Three;

E.      Reasonable attorneys' fees and costs from Nationstar Mortgage, LLC d.b.a. Champion Mortgage as to Counts One through Three;

F.      Punitive damages as to Counts Five and Six; and,

G.      Such other relief which this Court may deem appropriate.

Respectfully submitted:

*/s/ Javier L. Merino*
Javier L. Merino
DannLaw
372 Kinderkamack Road, Suite 5
Westwood, NJ 07675
Telephone: (216) 373-0539
Facsimile: (216) 373-0536
jmerino@dannlaw.com
notices@dannlaw.com
*Counsel for Plaintiff Joseph Scafidi*

## JURY DEMAND

Plaintiff Joseph Scafidi hereby respectfully demands a trial by jury on all such claims that may be so tried.

*/s/ Javier L. Merino*
Javier L. Merino
DannLaw
*Counsel for Plaintiff Joseph Scafidi*